528 A.2d 1002

Ford Motor Company, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Vehicle Manufacturers, Dealers and Salespersons, Respondent.

314

Submitted on briefs March 27, 1987, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Robert E. Kelly, Jr., Duane, Morris & Heckscher,* for petitioner.

*Jerome T. Foerster,* Deputy Attorney General, with him, *Andrew S. Gordon,* Chief Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

*Vincent J. Grogan,* with him, *Kathryn L. Simpson, Grogan, Graffam, McGinley & Lucchino, P.C.,* for intervenor, McCrackin-Sturman Ford, Inc.

OPINION BY JUDGE CRAIG, July 10, 1987:

Pursuant to a post-trial motion in our original jurisdiction, McCrackin-Sturman Ford, Inc., a vehicle dealership, requests entry of judgment in its favor, or in the alternative, a new trial, following an adjudication by Senior Judge BUCHER of this court upholding the right of the Ford Motor Company (Ford) to establish, over McCrackin's protest,[1] an additional Ford dealership within McCrackin's market area.

Our disposition of McCrackin's motion addresses Judge BUCHER's determination that the failure of the State Board of Vehicle Manufacturers, Dealers and Salespersons (board) to make a final determination with-

---

[1] McCrackin filed its protest with the State Board of Vehicle Manufacturers under Section 18(a) of the Board of Vehicles Act, Act of December 22, 1983, P.L. 306, §18(a), 63 P.S. §818.18(a).

in the statutory time period as extended by the parties, entitled Ford to a deemed decision that good cause does not exist for refusing to permit Ford to establish a new vehicle dealership in a proposed location under section 7 of the Board of Vehicles Act.[2] We must also consider whether the merits of this matter may be constitutionally resolved on a deemed decision basis.

Before Judge BUCHER's adjudication, the Supreme Court, in *Ford Motor Co. v. Commonwealth of Pennsylvania, State Board of Vehicle Manufacturers, Dealers and Salespersons*, 510 Pa. 91, 507 A.2d 49 (1986), had reversed this court's denial of McCrackin's motion to in-

---

[2] Section 7 provides in part:

*Any hearing on a protest by a dealer of any action by a manufacturer alleged to be in violation of a provision of this act must be conducted and the final determination made within 120 days after the protest is filed. Unless waived by the parties, failure to do so will be deemed the equivalent of a determination* that the manufacturer acted with good cause and, in the case of a protest of a proposed establishment or relocation of a dealer under section 10, *that good cause does not exist for refusing to permit the proposed additional or relocated new vehicle dealer,* unless such delay is caused by acts of the manufacturer or the additional or relocating dealer. Any parties to such a hearing shall have a right of review of the decision in a court of competent jurisdiction pursuant to 2 Pa. C. S. §701 (relating to scope of subchapter). If the board determined that good cause does not exist for refusing to permit the proposed additional or relocated new vehicle dealer, and the manufacturer thereafter enters into a franchise establishing that new vehicle dealer, the manufacturer shall not be liable for damages based upon such establishment even if a court reverses the determination of the board.

63 P.S. §818.7(emphasis added).

In *Ford,* 510 Pa. at 100 n.6, 507 A.2d at 54 n.6, the Supreme Court determined that the section 7 reference to section 10 should correctly be to section 18, 63 P.S. §818.18.

tervene before the board, and had concluded that the board's oral vote upholding McCrackin's protest did not constitute a "final determination" as required by section 7 of the Board of Vehicles Act, 63 P.S. §818.7. On the latter point, the Supreme Court, stating that the board is a Commonwealth Agency, relied on section 507 of the Administrative Agency Law, 2 Pa. C. S. §507, which requires that "[a]ll adjudications of a Commonwealth Agency shall be in writing . . . ."

Because the Supreme Court, in its opinion, set forth a detailed history of this case, we now recount only those findings of fact made by Senior Judge BUCHER, in his October 29, 1986 opinion, which are necessary for the disposition of McCrackin's post-trial motion.

On February 29, 1984, Ford sent to the board and to all vehicle dealers within the relevant market area, notice of its intention to establish an additional dealership in the North Hills area of Pittsburgh. McCrackin filed a protest, and the board convened a hearing on June 21, 1984. However, not all of the testimony was concluded on that date, and both counsel faced schedule conflicts until the week of July 23. Counsel for the board[3] then stated that the parties would have to waive that provision of section 7 of the Board of Vehicles Act requiring that the board conduct a hearing and make a final determination within 120 days after the filing of the protest. Here, the 120-day period began to run with McCrackin's March 21 protest, and would have required the board to issue its decision by July 19.

---

[3] In correspondence within the record, Michele Monaghan Nicholas is referred to exclusively as counsel to the State Board of Vehicle Manufacturers, Dealers and Salespersons. In that regard, Ford now requests that we modify Finding No. 13, which states:

The board was assisted in connection with the McCrackin protest by Michele Monaghan, an attorney, *who acted as legal counsel and hearing officer*. Ms. Monaghan has since married and is now known as Michele Monaghan Nicholas.

Counsel for McCrackin then indicated that he was willing to waive the 120-day decision requirement, and, the next day, Ford also agreed to an extension of the 120-day deadline until August 15, 1984. Accordingly, the board completed hearings on July 25-27. Ford then agreed to extend the decision deadline to August 31 so that both parties would have an opportunity to examine the transcripts in the preparation of their briefs and proposed findings. However, in response to Ford's agreement to give an extension to August 31, McCrackin stated its position that Ford's first waiver was unlimited. Nevertheless, the board's counsel placed upon the record its understanding that August 31, 1984 was the decision deadline under the Board of Vehicles Act, as extended by agreement of the parties, and that the board would issue a final decision in writing by that date.

In the weeks between the conclusion of the hearing and the board's decision deadline, Ford filed a motion to strike the testimony of McCrackin's expert witness, the transcript of which had been lost. However, Ford withdrew that motion on August 28 so that the board could timely issue its adjudication and order in accordance with the schedule. On August 17, Ford had also filed a motion to dismiss the McCrackin protest; the board denied that motion.

Although the board, on August 31, 1984, voted orally to sustain the protest of McCrackin, the board did

---

Ford notes that, although Mrs. Nicholas testified that, in her role as board counsel, she participates in some proceedings as a hearing officer, in the McCrackin protest, she acted only as legal counsel.

Because the record contains no evidence which suggests that Mrs. Nicholas assisted the board in the McCrackin protest by acting as a hearing officer, we strike that portion of Finding No. 13 because it is unsupported by substantial evidence.

not issue an order and decision in writing until October 26, 1984. As noted above, the written decision was the determinative one, as respects the statutory decision deadline.

The Supreme Court, in addition to reversing, remanded the case, with McCrackin entitled to intervene.

Consistent with that remand order, Senior Judge BUCHER, after a hearing, concluded that (1) Ford's agreement was to extend the decision deadline to August 15, 1984, and then to August 31, 1984, and that its agreements to those extensions did not constitute a complete waiver of the time limitation statutorily imposed upon the board's decision-making procedure; (2) the motions filed by Ford within two weeks of the August 31 deadline, consisting of a motion to strike the testimony of a witness when the transcript was lost, and a motion to dismiss the McCrackin protest, were properly filed and did not cause the board's failure to reach a decision by August 31; and (3) McCrackin failed to meet its burden of proving that it had detrimentally relied upon representations by Ford that Ford had agreed to an unlimited waiver of the 120-day decision rule; and (4) the Act's imposition of a 120-day limit upon the board's decision-making did not violate McCrackin's right to due process and equal protection, consistent with the United States Supreme Court's decision in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982).

Accordingly, Senior Judge BUCHER, by order dated October 29, 1986, granted Ford's application for summary relief and directed the board to issue the permits necessary for Ford to establish the proposed new dealership.

McCrackin then filed the present post-trial motion, requesting the entry of judgment notwithstanding the verdict or a new trial in the alternative.

Our scope of review in this post-trial motion is narrow. In *Community College of Beaver County v.*

*Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 589, 375 A.2d 1267, 1273 (1977), the Supreme Court stated:

> A court will enter a judgment notwithstanding the verdict if, and only if, viewing all the evidence (including inferences reasonably to be drawn therefrom) most favorably to the verdict winner, the elements of the cause of action or defense asserted have not, as a matter of law, been established. In passing on a motion for judgment n.o.v., findings of fact will not be disturbed if supported by evidence.

*See also* Standard Pa. Prac. 2d §64:4 (1982).

A motion for new trial may be granted only where there exists a manifest abuse of discretion or a clear error of law. *Chanda v. Commonwealth*, 86 Pa. Commonwealth Ct. 532, 485 A.2d 867 (1984). *See also* Standard Pa. Prac. 2d §§62:2, 62:3.

### Waiver of 120-day Decision Requirement

Addressing Judge BUCHER's conclusion that Ford agreed only to a limited waiver of the 120-day provision of section 7 of the Act, 63 P.S. §818.7, McCrackin contends that, by agreeing to any extension of the 120-day decision requirement, Ford has agreed to an unlimited waiver of that requirement. Second, McCrackin asserts that Ford did not in fact agree to extend the decision time period to a specified date, but actually agreed to an unlimited waiver.

In *General Motors Corp. v. Commonwealth of Pennsylvania, State Board of Motor Vehicle Manufacturers, Dealers and Salespersons*, 98 Pa. Commonwealth Ct. 187, 198, 511 A.2d 249, 254 (1986), this court stated that a waiver of the 120-day decision requirement "must be express or by necessary implication." McCrackin has not established that an unlimited waiver occurred be-

cause Judge BUCHER found that, at all times, Ford limited its extension agreement—first to August 15, and then only until August 31, 1984.[4] Those findings are supported by evidence of record. Further, McCrackin provides no legal support or persuasive argument for the proposition that a waiver of a time requirement is necessarily absolute and may not be limited to an agreement of the parties to a specific date.

McCrackin next challenges the court's conclusion that McCrackin failed to establish that Ford was equitably estopped from relying upon August 15, and later August 31, as the deadline date for the final determination. McCrackin, as the party asserting an estoppel, bore the burden of establishing, by clear, precise and unequivocal evidence, inducement and justifiable reliance upon that inducement. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502 (1983).

---

[4] Judge BUCHER found:

42. Mr. Ritok [co-counsel for Ford] sent a letter confirming Ford's agreement to extend the 120-day deadline until August 15, 1984, to Mrs. Nicholas [counsel for Board of Vehicles]. This letter was dated July 6, 1984. It stated that Ford had agreed to extend the 120-day deadline until August 15, 1984 . . . .

. . . .

47. Ford did not agree to an unlimited waiver but only agreed to extend the deadline for a decision to August 15, 1984.

48. Nothing in McCrackin's letter of June 22, 1984, led Ford to believe that its limited waiver was being construed by McCrackin as an unlimited waiver.

. . . .

55. The Board recognized that August 31, 1984 was the decision deadline under Section 7 as extended by the parties. In addition, the Board had admitted in this litigation that August 31, 1984, was its decision deadline under the Board of Vehicles Act as extended by agreement of the parties.

Judge BUCHER essentialy concluded that McCrackin had failed to prove that Ford had induced McCrackin to believe that the former had agreed to an unlimited waiver. He found that Ford believed that it had limited its waiver while McCrackin believed that the waiver was unlimited. The board suggested that the board, not Ford, bore the responsibility to dispel McCrackin's belief that the waiver was unlimited. We agree that, because board counsel established the procedure by which the two sides would agree upon the extension of the 120-day deadline, and communication between the parties was through her, McCrackin's misunderstanding of Ford's intention to extend the deadline only until a specific date resulted from the board's procedures, not from any wrongdoing by Ford.

In Finding No. 39, Judge BUCHER found that a letter dated June 22, 1984, from McCrackin's counsel to the board's counsel summarized a telephone conversation and stated that the board's counsel had relayed to McCrackin's counsel Ford's position on the 120-day requirement. Judge BUCHER found, in Finding No. 38, that "Ford's agreement to extend the 120-day deadline until August 15, 1984, was clearly and unequivocally stated to [board counsel] Mrs. Nicholas by [Ford counsel] Mr. Ritok on June 22, 1984 in accordance with the procedure established by Mrs. Nicholas." McCrackin has produced no evidence of words or actions by Ford which might have caused McCrackin to believe that Ford had agreed to an unlimited waiver of the decision deadline.

Judge BUCHER's conclusions rejecting McCrackin's unlimited waiver and equitable estoppel arguments are sound. Accordingly, Ford is entitled to a deemed decision under Section 7 that good cause does not exist for refusing to permit the proposed additional dealer.[5]

---

[5] Because our decision turns upon Ford's entitlement to a deemed decision by operation of law, we do not address McCrack-

## *Exclusion of Evidence*

McCrackin also appeals Judge BUCHER's exclusion of four memoranda written by counsel for the Board of Vehicles, chief counsel for the Bureau of Professional and Occupation Affairs and a Deputy Attorney General. Those memoranda included comment upon Judge BUCHER's December 20, 1984, opinion, initial reaction by the various Commonwealth counsel, and a preliminary expression of the Commonwealth's intention to appeal Judge BUCHER's order.

McCrackin argues that the excluded exhibits, McCrackin's Nos. 28-32 should have been admitted by the court because they do not fall within the atttorney-client privilege. Although Judge BUCHER did not set forth his rationale for excluding those exhibits, our review indicates that he committed no error.

Exhibit No. 29, a letter from Attorney General's office to the chief counsel of the Department of Transportation, Bureau of Professional and Occupational Affairs, states that the Office of Attorney General does not intend to intervene in this matter. McCrackin has not explained how that information is relevant to the issues raised in this proceeding. Exhibits Nos. 28 and 30-32, which consist of communications between the various Commonwealth offices interested in this proceeding, are either irrelevant to the issues presently raised or consist of evidence which is duplicative of that which counsel placed on the record before Judge BUCHER. Accordingly, we affirm Judge BUCHER's evidentiary rulings.

---

in's contention that Senior Judge BUCHER erred in his consideration of the section 18(c), 63 P.S. §818.18(c), factors by which the factfinder determines whether good cause exists for denying the proposed dealership.

### 120-Day Decision Rule as Violative of Due Process

Finally, McCrackin contends that the state's failure to issue a final determination within the 120-day time limit as extended, and the consequent statutorily-deemed decision in Ford's favor, deprived McCrackin of due process in its attempt to protect its property interest against Ford's proposed new dealership. In support, McCrackin cites *Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982).

In that case, a complainant brought a charge of discriminatory conduct against her employer before the Illinois Fair Employment Practices Commission. Under ¶ 858(b) of the Illinois Fair Employment Practices Act, Ill. Rev. Stat., Ch. 48, (1979), the commission then had 120 days within which to convene a factfinding conference designed to obtain evidence, ascertain the positions of the parties, and explore the possibility of a negotiated settlement. However, the commission failed to hold that conference within 120 days after the filing of the complaint, because the commission's representative had scheduled the conference for the 125th day after the complaint was filed.

Although the commission rejected the employer's request that the complainant's complaint be dismissed because no conference had been held within 120 days, the Illinois Supreme Court, on appeal, found that the language of the statute, "the Commission *shall* convene a factfinding conference . . ." (emphasis in original), was mandatory, and therefore the commission's failure to hold the conference within the mandated time limits deprived it of jurisdiction to consider the complainant's charge.

In addressing the complainant's due process claim, the Supreme Court first concluded that the complainant's discrimination cause of action constituted a proper-

ty interest, of which he could not be deprived except "for cause." (*Citing Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 11-12 (1978).) The Court then proceeded to determine what process was due the complainant consistent with his property interest. Concluding that the complainant had been denied due process, the Court stated, "it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise." 455 U.S. at 436. The court concluded, saying, "[w]hat the Fourteenth Amendment does require . . . 'is "an *opportunity* . . . granted at a meaningful time and in a meaningful manner," . . . "for [a] hearing appropriate to the nature of the case". . . .' " 455 U.S. at 437 (citations omitted).

Assuming that McCrackin's board protest does rise to the level of a property interest, we cannot, upon the present facts, conclude that the *procedures* set forth in section 18 of the Board of Vehicles Act, specifically, the 120-day decision rule, denied McCrackin a meaningful opportunity to be heard.

Judge BUCHER found that, after the first day of hearing, McCrackin's counsel requested that the board postpone the proceedings for three weeks. Of course, this court does not mean to suggest either that the board's failure to reach a written final determination by the agreed upon deadline was caused solely by McCrackin. However, that fact distinguishes the present case from *Logan,* where the board's actions alone denied the complainant even the opportunity to be heard. Ford's counsel also requested a delay in the proceedings, and certainly the board is not blameless for its failure to issue a written final determination by August 30, 1984. This combination of factors prevents us from attributing McCrackin's failure to receive a timely final

determination solely to the provisions of the Board of Vehicles Act.[6]

Because McCrackin has failed to establish either a clear error of law or a manifest abuse of discretion by the trial judge, its motion requesting a judgment notwithstanding the verdict or, in the alternative, a new trial, is denied.

## ORDER

Now, July 10, 1987, the post-verdict motion of McCrackin-Sturman Ford, Inc. for entry of judgment in its favor or, in the alternative, for a new trial, is denied.

---

[6] Before the Supreme Court, McCrackin successfully argued that unsettled factual and legal issues remained, which precluded the entry of summary judgment on behalf of Ford. Among them was that actions of Ford, specifically, the filing of a motion to strike testimony and a notice to dismiss McCrackin's protest, which Ford filed shortly before the board's determination was due, caused the board's delay and therefore constituted a constructive waiver of the 120-day decision rule. McCrackin has not raised that issue at this time and we do not address it. We do note that, in Finding No. 61, Judge BUCHER found that Ford's actions did not cause the delay in the issuance of the board's decision and adjudication.