**Griesel v. Seaser**

*Barry W. Krengel,* for appellants.
*Joseph T. Bambrick Jr.,* for appellees.

STALLONE, *J.,* February 2, 1996—This is an action for damages arising out of a "rear-end" collision which occurred on December 23, 1991, at approximately 7:45 a.m. At that time, appellant Molly Griesel was driving her automobile in a westerly direction in the passing lane on Interstate 78 when her vehicle was struck by a tractor-trailer being driven by appellee Jerry William Seaser. The corporate appellee, K&S Central States Truck Leasing Inc. is the owner of the tractor-trailer.

As a result of the collision, Mrs. Griesel suffered broken ribs and lower back pain which required her to spend two weeks in bed at home and to miss a total of four weeks of work. At trial, appellees denied all liability claiming that the collision occurred when Mrs. Griesel suddenly stopped her vehicle without warning and that, as a result, Mr. Seaser did not have sufficient time to bring the tractor-trailer to a complete stop.

In response to question nos. 1, 2, 3 and 4 contained on a special interrogatory form submitted to the jury by this court, 11 of the 12 jurors found that both Mr. Seaser and K&S were negligent and that their negligence was a substantial factor in causing the collision. In response to question nos. 5 and 6, all 12 jurors found

that Mrs. Griesel was contributorily negligent and that her contributory negligence was a substantial factor in causing the collision. In response to question no. 7, in which the jurors were asked to assess the percentage of comparative negligence attributable to the parties, all 12 jurors found that 51 percent of the total combined negligence was attributable to Mrs. Griesel and that 49 percent of the total combined negligence was attributable to Mr. Seaser. The court, therefore, molded the verdict in favor of appellees and against appellants which, incidentally, was contrary to the award previously entered by a Berks County Board of Arbitrators.[1] Appellants thereafter filed a motion for post-trial relief pursuant to Pa.R.C.P. 227.1 which this court denied. This timely appeal followed.

Appellants present the following issues for review:

(1) Whether this court erred in refusing to permit them to question Mr. Seaser about his past driving record relative to their claim that K&S negligently entrusted the tractor-trailer to Mr. Seaser;

(2) Whether this court's subsequent curative instruction to the jury relative to this attempted questioning of Mr. Seaser was proper;

(3) Whether this court erred in allegedly sua sponte instructing the jury on the "sudden emergency doctrine;" and

(4) Whether this court erred in not charging the jury that a violation of the "assured clear distance ahead" rule constituted negligence per se.

---

1. This action came before this court and jury as a result of an appeal filed by appellants from an award of a Berks County Board of Arbitrators in favor of appellants in the sum of $20,000. Of that amount, the board awarded appellants the sum of $11,384.88 for past and future pain and suffering and loss of consortium and the balance of $8,615.12 for property damage to the Griesel vehicle.

We will begin with the issue of whether this court erred in refusing to permit appellants' counsel to question Mr. Seaser about his past driving record relative to their claim of negligent entrustment. The question was as follows:

"BY MR. KRENGEL:

"Okay, when you first applied for a job a year and a half before the accident, did you tell Mr. Schuck about your past record and the many times that your license had been suspended?

"MR. BAMBRICK: Objection." (N.T., trial, p. 85.)

This court immediately thereafter excused the jury and heard argument relative to this issue after which this court ruled that the evidence sought to be elicited was not relevant and, therefore, sustained the objection to it by the appellees. (N.T., trial, pp. 85-97.)

For evidence to be admissible, it must be relevant. *Stern v. Vic Snyder Inc.,* 325 Pa. Super. 423, 473 A.2d 139 (1984). Evidence is relevant when it tends to establish some fact material to the case or tends to make a fact at issue more or less probable. *Engle v. West Penn Power Co.,* 409 Pa. Super. 462, 598 A.2d 290 (1991), *appeal denied,* 529 Pa. 669, 609 A.2d 334 (1992). Evidence is material when it forms an element of a cause of action. *Warden v. Zanella,* 283 Pa. Super. 137, 423 A.2d 1026 (1980).

Section 308 of the Restatement (Second) of Torts describes the tort of "negligent entrustment" as follows:

"It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

The liability of the "entruster" is based solely upon his or her knowledge at the time of the entrustment. *Wertz v. Kephart,* 374 Pa. Super. 274, 282, 542 A.2d 1019, 1023 (1988) . In *Wertz,* the trial court precluded. testimony concerning the entrustment of car keys to an allegedly intoxicated individual 17 hours before the collision. In reversing the trial court's decision, the Superior Court at 284, 542 A.2d at 1024, reasoned that:

"Appellants need to prove 'knowledge' on the part of appellees that Kephart was incompetent or unfit to drive. If Kephart was intoxicated, then appellants can meet this burden of proof. If and when appellants prove Kephart was intoxicated when he received the keys from appellees and appellees knew what Kephart's condition was, the question of causation should be one for the jury."

In the case at bar, appellants did not attempt to elicit any testimony about what K&S knew about Mr. Seaser's driving record either at the time that it entrusted the tractor-trailer to Mr. Seaser or on the morning of the collision. Instead, counsel merely asked about what Mr. Seaser told K&S president, Kenny Schuck, 18 months previously when he first applied for the job, before the tractor-trailer had been entrusted to Mr. Seaser. Therefore, the evidence sought to be elicited was not relevant to the issue of entrustment on the morning of December 23, 1991.

However, even assuming, arguendo, that the evidence would have been relevant, the prejudicial impact of the evidence substantially outweighed its probative value. A trial court may in its discretion exclude evidence if its probative value is substantially outweighed either by the danger of unfair prejudice or the possibility that it will confuse or mislead the jury. *Daset Mining Corporation v. Industrial Fuels Corporation,* 326 Pa. Super.

14, 22, 473 A.2d 584, 588 (1984). Here, the question was merely an invitation for the jury to decide the case on an improper basis, that being that Mr. Seaser had been negligent on other occasions and, therefore, he must have been negligent on this occasion as well. Accordingly, this court did not err in refusing to permit appellants to continue this line of questioning.

Appellants next contend that this court's curative instruction to the jury as to this issue was improper.[2] However, under Pennsylvania law, only those issues which have been properly preserved at trial by way

---

2. The text of the curative instruction was as follows:

"THE COURT: Members of the jury, it's my responsibility, as I am sure you know, to make certain that the parties in this case receive a fair trial . . .

"Accordingly, I am instructing you at this particular time that with regard to the last question that was asked that you try to totally disregard it as if it was never asked. And I know that that's very very difficult, but I believe that you can do it. And you can do that if you also keep in mind what I am now about to say. And that is, that the defendant here, Mr. Seaser's driver's license was not only not suspended many times, but that it was not suspended at all within the 10 years prior to this incident. And therefore an answer to that question is totally irrelevant and should be totally ignored . . .

"Again, the defendant's driver's license was not only not suspended many times, but it was not suspended at all within the last 10 years. Now, is there anyone on this jury that has difficulty or any reservation about accepting the instruction that I have now given to you? If there is anyone who feels that their mind has been prejudiced in such a way by that you can't blot it out of your mind please let the court know at this time and we will substitute one of the alternate jurors.

"All right, there being no hands up I want to thank you very much for your cooperation and I apologize to you for this delay. All right, Mr. Seaser you want to get back to the stand?" (N.T., trial, pp. 105-108.)

of a specific objection may be considered on appeal. *Tagnani v. Lew,* 493 Pa. 371, 426 A.2d 595 (1981); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). The failure to timely object to a jury instruction will result in a waiver of that issue. *Fillmore v. Hill,* 445 Pa. Super. 324, 665 A.2d 514 (1995). An examination of the following excerpt from the record clearly demonstrates that not only did Attorney Krengel fail to make any specific objection to the curative instruction but that he obviously agreed to it *before* it was given to the jury by the court:

"THE COURT: All right now, the only thing that I can think of that might cure this is if I would tell the jury that the defendant's driver's license was not only not suspended many times but that it was not suspended at all within the last 10 years. And I think that if I tell them that, that that might avoid a mistrial . . . Then you could go on with the trial. I don't know why either one of you would want to go back and try this case again.

"MR. KRENGEL: I don't.

"MR. BAMBRICK: Your honor, I don't want to try this any more than anybody else but—

"THE COURT: Give it some thought . . .

"MR. BAMBRICK: I don't know how you are going to totally wipe it out of their mind.

*"MR. KRENGEL: May I? I know I'm not one to talk since I got us into this mess.*[3]

"THE COURT: You are correct, but I will let you talk anyway.

---

3. All italicized language contained in this memorandum opinion is purely for emphasis only.

"MR. KRENGEL: Thank you, sir. Maybe the way to handle it would be to simply without even repeating the question, disregard the last question. It was not answered. You are not to draw any inferences from it and you just go—

"THE COURT: No, certainly not.

"MR. KRENGEL: Maybe not even say anything.

"THE COURT: Certainly not. If anything it's going to be what I wrote out here.[4]

*"MR. KRENGEL: Needless to say I don't object to anything you do at this point.*

*"THE COURT: I didn't think that you would. You shouldn't.*

*"MR. KRENGEL: I'm not."* (N.T., trial, pp. 100-103.)

Therefore, we find that this issue has been waived. See *Jackson v. Phillips,* 502 Pa. 326, 328, 466 A.2d 130, 131 (1983).

Thirdly, appellants contend that this court erred in allegedly sua sponte instructing the jury relative to the "sudden emergency doctrine." We disagree. At the outset, it should be noted that this court did not give the instruction sua sponte. On the contrary, the record establishes that the charge was given only after a colloquy between the court and counsel.[5] (See N.T., trial, pp. 167-170.)

Secondly, the "sudden emergency" doctrine is an absolute defense to an allegation of negligence and is available to any defendant who suddenly and unexpectedly finds himself or herself confronted with a per-

---

4. The court is making reference to the statement "that the defendant's driver's license was not only not suspended many times but that it was not suspended at all within the last 10 years."

5. The appellees submitted a proposed point for charge to the court relative to the "sudden emergency" doctrine pursuant to paragraph 17 of the pretrial settlement conference disposition order entered by this court on September 26, 1994.

ilous situation that permits no opportunity to assess the danger and respond appropriately. *Cannon v. Tabor,* 434 Pa. Super. 232, 240-41, 642 A.2d 1108, 1112 (1994). The doctrine is applicable where, as here, the defendant establishes that he or she did not create the emergency and that he or she responded in a reasonable fashion. *Id.* at 241, 642 A.2d at 1112, citing *Westerman v. Stout,* 232 Pa. Super. 195, 335 A.2d 741 (1975).

In arguing that this court erred in charging the jury on the sudden emergency doctrine, appellants ignore the fact that the jury found that both of the appellees were in point of fact *negligent* and that their negligence was a *substantial factor* in causing the collision. As a result, their sudden emergency defense was not accepted by the jury and, therefore, this issue must now be considered moot. *Olson v. Washington Country Club,* 340 Pa. Super. 168, 172, 489 A.2d 895, 897-898 (1985).

Appellants further assert that if the sudden emergency doctrine applied in this case, as we believe that it did, then it must likewise apply to Mrs. Griesel's conduct. This is very interesting; however, appellants not only failed to request such an instruction but objected to it being given to the jury in any form. (N.T., trial, pp. 169-170.)

Finally, appellants contend that this court erred in not charging the jury that a violation of the "assured clear distance ahead" rule constituted negligence as a matter of law or negligence "per se." It is clear that this issue is also moot given the jury's finding that both defendants-appellees, Mr. Seaser and K&S, were in point of fact *negligent* and that their negligence was a *substantial factor* in causing the collision. See *Olson v. Washington Country Club, supra.*

And so, for all of the foregoing reasons, we respectfully urge that this appeal be denied.